**STARK & STARK**
A Professional Corporation
Thomas S. Onder (7880)
993 Lenox Drive, Bldg. 2
Princeton, New Jersey 08543-5315
(609) 896-9060
Attorneys for Display Points Group, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISPLAY POINTS GROUP, INC., dba DISPLAY POINTS NETWORK, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DC MEDIA & MARKETING dba DC SALES, INC., a Nevada corporation, <br><br> Defendant, | CIVIL ACTION NO. 12-06563 (TPG) <br><br> *Civil Action* <br><br><br> **AFFIDAVIT OF DAVID A. HAZZARD IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT ON BEHALF OF DISPLAY POINTS GROUP, INC., dba DISPLAY POINTS NETWORK** |

I, David A. Hazzard, do affirm and say the following upon my review of the books and records of Display Points Group, Inc., dba Display Points Network, a Delaware corporation ("Display Points"), as well as my own personal knowledge.

**Display Points Operating Agreement With BK SEMS Media**

1. I am the Chief Executive Officer of Display Points, a business incorporated in Delaware.

2. Display Points regularly does business in New York City and has business mailing address of 375 Hudson St., 7th Floor, New York, NY 10014.

3. Plaintiff, Display Points and BK SEMS USA, Inc., a California corporation, entered into joint venture agreement (the "Operating Agreement") whereby the two (2) companies would possess a 50% ownership interest in BK SEMS Media, LLC dba Display Points Network, a

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

California limited liability company ("BK SEMS Media"). (See attached a true and correct copy of the Operating Agreement as "Exhibit "A").

4. Among the provisions of the Operating Agreement was that BK SEMS Media named me, David A.Hazzard as its Manager. Specifically, the Operating Agreement provided that I had, the power to manage:

> ...the business, property, and affairs of the Company, including without limitation, the power to exercise on behalf of and in the name of the Company...

(See Operating Agreement, Section 4.3.1).

**Agreement with Defendant for Substantial Business in New York City**

5. In mid-2011, I began discussions with Defendant, DCMM and its president, Daniel Curtin, about entering into a business agreement to marketing tabletop devices (the "Devices") at restaurants, bars, and similar establishments ("Venues") in various locations, including a significant amount of locations in New York State, including New York City with BK SEMS Media.

6. On January 27, 2012, Defendant, DCMM's representative contacted me as to the status of the discussed business agreement. (See attached a true and correct copy of the January 27, 2012 email chain as "Exhibit "B").

7. On or about January 31, 2012, I entered into an agreement on behalf of BK SEMS Media (the "Agreement") with Defendant, DCMM for marketing of the Devices at Venues. (See attached a true and correct copy of the Agreement as "Exhibit "C").

8. After signing the Agreement, Daniel Curtin advised me that Defendant, DCMM would not provide any services until and unless it was first provided the $250,000 as contained in the Agreement.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

**Terms of the Agreement**

9. The terms of the Agreement provided that Defendant, DCMM was to procure persons, companies, businesses and other entities to enter into advertising sales agreements ("Advertising Sales Agreements") and venue procurement agreements ("Venue Procurement Agreements") with BK SEMS Media for placement of the Devices at Venues. (Collectively, the "Advertising Sales Agreements" and "Venue Procurement Agreements" shall be referred to as "Advertising/Venue Agreements").

10. All of my conversations and communications with DCMM's representatives, including Dan Curtin, confirmed that more than 50% of the initial business to be generated by the Advertising/Venue Agreements was to occur in the New York City metropolitan area.

11. As a condition of the Agreement, Defendant, DCMM was to submit and obtain approval of any Advertising/Venue Agreements from BK SEMS Media prior to entering into any Advertising/Venue Agreements. (See Section 2.2.1 of the Agreement).

12. As a condition of the Agreement, Defendant, DCMM was to only use BK SEMS Media's approved Advertising/Venue Agreements. (See Section 2.2.4 of the Agreement).

13. As a condition of the Agreement, Defendant, DCMM was to submit on or before July 31, 2012 to BK SEMS Media a report outlining its performance (the "Performance Report"). (See Section 3.2 of the Agreement).

14. The Agreement provided that compensation would be based as follows:

   a. $1,000 for each Venue presented by Defendant, DCMM and approved by BK SEMS media that executed a Vendor Procurement Agreement;

   b. $250,000 as an initial payment for services; and

   c. $250,000 once BK SEMS Media obtained 250 Venue Procurement Agreements through the efforts and services of Defendant, DCMM.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

15. The Agreement also provides that the prevailing party in any action shall be entitled to recover its attorneys' fees and costs. (See Section 4.12 of the Agreement).

**The Assignment**

16. Prior to April 1, 2012, BK SEMS Media's other 50% owner, BK SEMS USA, Inc. advised through its Chief Operating Officer, Alan Johansen, that it wanted to assign all rights in the Agreement to Display Points.

17. On or about April 1, 2012, BK SEMS Media assigned their rights and responsibilities to Plaintiff, Display Points. (See attached a true and correct copy of the Assignment as "Exhibit "D").

18. Prior to executing the Assignment, I spoke with Daniel Curtin to advise of the Assignment.

19. During the conversation, Daniel Curtin confirmed with me that Defendant, DCMM was in agreement with the Assignment and that he, on behalf of Defendant, DCMM would execute a requisite document, if need be, for the Assignment, so long as Defendant, DCMM was paid the $250,000 initial payment to perform the requisite work.

20. Mr. Curtin reminded me that he was not going to perform any work unless he received the $250,000.

21. Mr. Curtin also advised that he was leaving for China for business and would be return in a few weeks.

22. On April 10, 2012, based on Daniel Curtin's representations to me regarding confirmation of the Assignment, Plaintiff, Display Points sent Defendant, DCMM a wire for the $250,000 initial payment. (See attached a true and correct copy of the wire confirmation as "Exhibit "E"). (Hereinafter the Agreement and Assignment shall be collectively referred to as the "Agreement".)

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

23. If Defendant, DCMM's representative, Daniel Curtin had not agreed orally to the Assignment, I would have never authorized payment of the $250,000.

24. Upon information and belief, Defendant, DCMM deposited the $250,000 initial payment.

**Defaults**

### a. *May 9, 2012 Meeting*

25. On May 9, 2012, I attended on behalf of Plaintiff, Display Points with Defendant, DCMM, an all-day meeting to discuss Advertising/Venue Agreements procurement procedures.

26. At the meeting, I emphasized to Defendant, DCMM's representative, including Daniel Curtin, that all Advertising/Venue Agreements were to be submitted to Plaintiff, Display Points for approval. Further, I advised that despite Plaintiff, Display Points paying $250,000 to Defendant, DCMM no Advertising/Venue Agreements and or reports regarding any activity for generating the same had been submitted.

27. Further at the meeting, I specifically asked Mr. Curtin as to the status of the signed Assignment from Defendant, DCMM. Mr. Curtin advised me that he had the signed document at his office and that he would provide to me on his return.

### b. *June 4 and 5, 2012 Emails*

28. On June 4, 2012, I became frustrated with not receiving the Assignment and virtual lack of any progress under the Agreement. I pointedly asked if Defendant, DCMM wanted to proceed with the work. Mr. Curtin affirmed the same. (See attached a true and correct copy of June 4, 2012 email chain as "Exhibit "F").

29. On June 5, 2012, Defendant, DCMM requested two (2) Devices from Plaintiff, Display Points. (See attached a true and correct copy of June 5, 2012 email chain as "Exhibit "G").

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

-5-

30. I responded to the request for the two (2) Devices, advising that I would send the two (2) Devices. Further, I advised that Plaintiff required Defendant, DCMM's signature of the Assignment that had been sent in April and which had previously been orally agrees to by Daniel Curtin, as President of Defendant, DCMM. (See Exhibit "G").

31. In addition, I also advised that Plaintiff, Display Points failed to receive a timeline, status of marketing efforts, as well as a Performance Report pursuant to the Agreement. (See Exhibit "G").

32. Despite not being provided with a timeline, status of marketing efforts, as well as a Performance Report, on or about June 11, 2012, I sent on behalf of Plaintiff, Display Points, two (2) working Devices upon request from Defendant, DCMM.

### c. *June 13, 2012 Email*

33. On June 13, 2012, I, again, inquired as to the signed Assignment, as well as the numerous defaults by Defendant, DCMM. (See attached a true and correct copy of June 13, 2012 email chain as "Exhibit "H").

### d. *June 15, 2012 Phone Call*

34. On or about June 15, 2012, Defendant, DCMM's representative Daniel Curtin called me and advised for the first time that Defendant, DCMM believed the Agreement was invalid.

35. At no time prior to June 15, 2012 had Defendant, DCMM, including its representative Dan Curtin, ever advised that:

    a. the Assignment was invalid;

    b. that Plaintiff, Display Points was not considered a party to the Agreement; and/or

    c. that it was not conducting business with Plaintiff, Display Points since the Assignment.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

### e. *July 9, 2012 Defaults*

36. On or about July 9, 2012, Defendant, DCMM's representative advised me that it had not and would not submit to Plaintiff, Display Points:

   a. any Advertising/Venue Agreements for approval; and

   b. any Performance Report.

### Demand for Return of $250,000

37. On or about July 10, 2012, the manufacturer of the Devices advised me that Defendant, DCMM contacted their London, England office for information and sample Devices so that Defendant, DCMM could place the same in Venues and collect the advertising themselves.

38. I immediately demanded either the cure of the default or return of Plaintiff, Display Points' initial $250,000.

39. On or about July 24, 2012, Defendant, DCMM advised me it would not return the $250,000.

### Lawsuit Filed

40. On or about August 24, 2012, Plaintiff filed a lawsuit for return of the $250,000, attorneys' fees and costs and damages incurred.

41. Subsequently, Defendant filed a Motion to Dismiss.

42. On or about September 25, 2013, the Court issued and opinion and denied the Defendant's Motion to Dismiss. (See attached a true and correct copy of Opinion as "Exhibit "I").

43. On or about October 10, 2013, Plaintiff filed a Request to enter default as the period to file responsive pleadings from the date of the September 25, 2013 Opinion expired. (See attached a true and correct copy of Plaintiff's Request for Entry of Default as "Exhibit "J").

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

**Total Due and Owing**

44. Due to Defendant's breach of the Agreement, Plaintiff has lost two years (2012 thru 2013) for profits associated with the Agreement and will lose another year through 2014 of profits due to the Defendant's breach.

45. In the first year of the Agreement, it was projected that there would be 2000 Venues with over 37,500 units distributed providing net income of $15,053,374.00.

46. In the second year of the Agreement, it was projected that there would be another 3,000 Venues, 5,000 total Venues with over 112,500 units distributed providing net income of $109,598,451.00.

47. In the third year of the Agreement, it was projected that there would be another 3000 Venues, 8,000 total Venues with over 187,500 units distributed providing net income of $194,171,095.00.

48. As a result just in the two years and looking ahead to the end of 2014, Plaintiff will have lost more than $318,831,920.00 in lost profits due to Defendant's breach.

49. As of October 28, 2013, Defendant is liable for **$319,094,732.92**, plus reasonable attorney fees and costs and any additional fees, costs, damages, interest that accrues comprised of:

    a. $250,000.00 the initial payment;

    b. $12,812.92 interest for $250,000 calculated at Prime +2% from April 1, 2012 to October 28, 2013;

    c. $318,831,920.00 lost profits from 2012 to 2014;

(A true and correct copy of the Accounting is attached as Exhibit "K". See Onder Affirmation for calculation of attorney fees and costs).

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

I hereby affirm the following statements made by me are true. I understand if any of the statements made by me are wilfully false, I am subject to punishment.

By: _____
DAVID A. HAZZARD

Dated: November 1, 2013

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543